# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————— x

WILMA BRITO, PHYLLIS GONZALEZ,          :
DEBBIE BACOTE, MIRIAM PERLON,           :
SARA PAGAN and RAYVEN CABREJA,          :
by their mother and next friend LOURDES :
CRUZ, and ANNIE SADLER, individually    :     09-CV-1621(RRM)(RML)
and on behalf of all others similarly situated, :
                                        :     STIPULATION OF SETTLEMENT
                          Plaintiffs,   :
                                        :
              v.                        :
                                        :
THE NEW YORK CITY HOUSING AUTHORITY and :
RICARDO ELÍAS MORALES, in his official capacity as :
Chairperson of the New York City Housing Authority, :
                                        :
                          Defendants.   x

WHEREAS, this action was commenced on April 21, 2009, alleging that the New York

City Housing Authority ("NYCHA") was engaged in a widespread and systemic practice of

failing to maintain its elevators in operable working condition, in violation of the Americans

with Disabilities Act, 42 U.S.C. §§ 12101 et seq. and Section 504 of the Rehabilitation Act of

1973, 5 U.S.C. § 790;

WHEREAS, on September 24, 2009, the Court issued an Order granting, on consent of

the Defendants, Plaintiffs' motion for class certification, thus certifying a class consisting of

> All individuals who use wheelchairs, walkers, or other assistive
> devices for mobility, or have health conditions such as asthma or
> heart problems that substantially limit their ability to walk up and
> down stairs ("individuals with mobility impairments"), who are or
> will be residents of housing owned and operated by NYCHA;

WHEREAS, the parties have conducted discovery regarding the claims and defenses in

this action;

WHEREAS, the parties wish to resolve this dispute amicably and expeditiously;

WHEREAS, the parties have agreed to the entry of this Stipulation without any admission of liability and without a trial;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the parties to this action, as follows:

**I.      Definitions**

A.      "Customer Contact Center" means the NYCHA designated office that receives complaints and requests, including requests for emergency repairs in apartments or in public spaces.

B.      "Effective Date" means the date on which this Stipulation is so ordered by the Court.

C.      "Elevator Outage" means any unscheduled service interruption.

D.      "Environmental Conditions" means factors external to NYCHA elevators such as fire, flood, or weather.

E.      "Equipment Failure" means the cessation of normal operation due to mechanical or electrical breakdown and not a result of Vandalism or Environmental Conditions.

F.      "High Rise Building" means a residential building with nine or more floors.

G.      "No-service Situation" means a situation where a building is without service from any elevator.

H.      "Report Date" means the date one month after the conclusion of each Report Period.

I.      "Report Period" means the six-month period beginning on the first day of the month after the Effective Date, and each six-month period thereafter.

J.      "Senior Building" means a building restricted to individuals age 62 or older.

K.      "Stipulation Period" means the period that this Stipulation is in effect.

L.      "Tenant Leader" means the duly elected resident association president.

M.      "Three-Month Average" means a percentage figure for a particular month that is calculated by according equal weight to data from that month and from each of the preceding two months.

N.      "Vandalism" means the intentional or willful destruction or defacement of property.

2

**II.     Actions to be taken by NYCHA to improve elevator service**

Unless otherwise noted, NYCHA will take the following actions within 60 days of the Effective Date of this Stipulation.

**A.     Prioritizing Responses to Elevator Outages**

1.     In the absence of an emergency involving fire, public safety, or emergency medical services, NYCHA will dispatch appropriate elevator maintenance and repair staff to buildings with No-service Situations before buildings which have some service.

2.     In prioritizing the dispatch of elevator maintenance and repair staff among multiple buildings with no elevator service, NYCHA will consider the following factors: whether the building is a High Rise Building, whether the building is a Senior Building, whether there are persons with mobility impairments waiting in the lobby, and whether the dispatcher knows that the Elevator Outage was reported by a mobility-impaired person.  When receiving a call reporting an Elevator Outage, the Customer Contact Center will inquire whether the caller is mobility impaired, and if so, pass that information to the dispatcher.

**B.     Restoring and Improving Service**

1.     Absent circumstances beyond NYCHA's control, within six months of the Effective Date, NYCHA will restore service in:

(a)     95% of No-service Situations in any given three-month period, measured by Three-Month Average, within 24 hours after NYCHA learns that a building is without elevator service;

(b)     90% of all Elevator Outages in any given three-month period, measured by Three-Month Average, within 24 hours after NYCHA learns of the Elevator Outage;

(c)     75% of No-service Situations in any given three-month period measured by Three-Month Average, within 8 hours after NYCHA learns that a building is without elevator service; and

(d)     70% of all Elevator Outages in any given three-month period, measured by Three-Month Average, within 8 hours after NYCHA learns of the Elevator Outage.

2.     NYCHA will maintain its elevators in good working condition and perform all repairs necessary to ensure that the average number of Elevator Outages across all NYCHA developments does not exceed one Elevator Outage per car per month due to Equipment Failure.

3.     If, during any given month, a building experiences No-service Situations more than four times or an elevator has experienced more than five Elevator Outages due to Equipment Failure, NYCHA will develop and begin to implement a written plan of action within

one month to improve the performance of that elevator and/or schedule the elevator for future corrective action. Within three months of the implementation of such a plan, NYCHA will reevaluate the performance of the elevator to ensure that the action was effective. If the action was not effective, NYCHA will schedule the elevator for appropriate corrective action.

**C. Preventive Maintenance**

1. Absent circumstances beyond NYCHA's control, NYCHA will perform preventive maintenance tasks listed in Appendices A and B to the NYCHA Standard Procedure Manual 060:62:1 ("Appendices A and B") attached hereto as Exhibit 1, the terms of which are incorporated into this Stipulation, within the times set forth in Appendices A and B as follows:

(a) Within 6 months of the Effective Date of this Stipulation, NYCHA will perform at least 70% of the monthly (measured by Three-Month Average), quarterly, semi-annual and annual scheduled preventive maintenance tasks in the period scheduled;

(b) Within 1 year of the Effective Date of this Stipulation, NYCHA shall perform at least 75% of the monthly (measured by Three-Month Average), quarterly, semi-annual and annual scheduled preventive maintenance tasks in the period scheduled; and

(c) Within 18 months of the Effective Date of this Stipulation, NYCHA shall perform at least 85% of the monthly (measured by Three-Month Average), quarterly, semi-annual and annual scheduled preventive maintenance tasks in the period scheduled.

2. If any applicable preventive maintenance task is not completed in the period listed in Appendices A and B, NYCHA will schedule it to be completed the following month.

3. If any applicable preventive maintenance task is not completed in the month following the period listed in Appendices A and B, the applicable supervisor will formulate a written plan of action to complete that task.

**D. Inspections and Violations**

1. NYCHA will satisfy its elevator inspection obligations as required by applicable law.

2. NYCHA will remedy all unsatisfactory conditions observed during inspections and tests within the timeframes established by applicable law.

3. Inspection reports will be accessible and supervisors will consider them, as necessary, in preparing preventive maintenance plans and in conducting special assessments.

**E.**     **Maintenance and Use of Data**

1.     When any building is without elevator service, NYCHA shall record:

(a)     The elevator identifier (including building address and car-specific identifying information) for any elevator involved in the No-service Situation;

(b)     The date and time the Elevator Outage was reported;

(c)     The date and time elevator service was restored; and

(d)     When the information becomes available, the length of time the building was without elevator service.

2.     For every elevator malfunction and Elevator Outage, NYCHA will record:

(a)     The elevator identifier (including building address and car-specific identifying information);

(b)     Classification of the problem as out of order or running with a problem;

(c)     A note with a more descriptive nature of the problem;

(d)     The source of information about the malfunction or Elevator Outage;

(e)     Whether the malfunction or Elevator Outage was part of a No-service Situation;

(f)     The date and time at which (i) the problem was first reported to NYCHA; (ii) the problem was verified by NYCHA staff or vendor; (iii) NYCHA staff or vendor was assigned to resolve the problem, if resolution is necessary; and (iv) the problem was resolved and the elevator restored to normal operation;

(g)     The work performed and the names of the NYCHA staff or vendor who performed it; and

(h)     A description of additional work, if any, required to ensure the malfunction is resolved and if feasible, to reduce the chance that it will reoccur.

3.     NYCHA will record the following information about preventive maintenance for each elevator:

(a)     Elevator identifier (including building address and car-specific identifying information);

(b)     List of all scheduled preventive maintenance tasks and the timeframes in which each task is scheduled to occur;

5

(c)      For each task: (i) the date on which the task was completed; and (ii) the names and job titles of NYCHA staff or vendor who completed the task; and

(d)      Total time spent on preventive maintenance for that elevator during each month.

4.      NYCHA will record inspections for each elevator.  The data will include:

(a)      Elevator identifier (including building address and car-specific identifying information);

(b)      List of scheduled inspections, including timeframe in which each inspection is scheduled to occur; and

(c)      For each completed inspection: (i) date and time of completion; (ii) names and titles of NYCHA staff or vendor completing the inspection; (iii) results of the inspection, including detailed descriptions of any deficiencies identified; (iv) plans to remedy any such deficiencies; and (v) the action taken to remedy the deficiency.

5.      NYCHA shall record the following information about any violations issued for an elevator:

(a)      Elevator identifier (including building address and car-specific identifying information);

(b)      Issuing entity and date of issuance;

(c)      Description of the violation;

(d)      Any action taken to remedy the violation; and

(e)      Date the violation is remedied.

6.      All records and data regarding elevator service, operation, and maintenance identified in this section shall be available to NYCHA staff or vendors performing maintenance, inspections, and repairs on those elevators and, upon request, to vendors performing those functions.  Staff and vendors will review such data as necessary to perform their task.

7.      The data described in paragraphs 1-6 of this Section reflect the capacity of MAXIMO as of the date of entry of this Stipulation.  Should NYCHA make enhancements to MAXIMO in the future, including, but not limited to, the capacity to record additional types of data regarding elevators or the capacity to retrieve data regarding elevators in searchable or queryable form, NYCHA will inform Plaintiffs' counsel of such enhancements (*see, e.g.* Sections III.F and III.G), and the parties will discuss whether NYCHA shall be required to

6

maintain and produce to Plaintiffs' counsel such additional data, or data in such formats, pursuant to this Stipulation.

### F.      Elevator Oversight and Staffing

1.      Each supervisor will be responsible for a particular set of elevators, as geographically close together as practicable.  Nothing herein shall prohibit NYCHA from using supervisors to be responsible for elevators outside of their assigned lot of elevators for short durations of time, such as to cover other supervisors' absences.  These supervisors shall be responsible for the preventive and corrective maintenance of the elevators under their control.

2.      At least once each month, each supervisor shall review the preventive maintenance, corrective maintenance, inspections, and violations data for each development, building, and staffing unit under his/her supervision; and shall consider the results of such review in making future decisions regarding preventive and corrective maintenance of the elevators under his/her control.

3.      Each supervisor shall perform spot checks on an average of ten elevators under his/her control per week to determine if any extra preventive maintenance is necessary, record the results of these spot checks, and, if any extra maintenance is necessary, arrange to have the work done within an appropriate time frame.

### G.      Communication with Tenants

1.      NYCHA will provide mobility-impaired tenants with information and assistance during Elevator Outages, including:

(a)      NYCHA will inform mobility-impaired tenants who contact the Customer Contact Center that the service request has been received and that NYCHA is taking appropriate action to remedy the Elevator Outage;

(b)      NYCHA will inform mobility-impaired tenants who seek to leave or return to their apartments during an Elevator Outage that they may request dispatch of stair climbers, and will promptly dispatch stair climbers where requested; and

(c)      NYCHA will promptly dispatch its personnel as necessary.

2.      NYCHA will post a notice on every floor of a building affected by an Elevator Outage, informing residents that the elevator is out of service.

3.      NYCHA will directly notify all Tenant Leaders and residents with mobility impairments of all instances in which NYCHA has confirmed that all service to a building has been or could reasonably be expected to be out more than four hours, except it will not call between the hours of 10 p.m. and 7 a.m. on weekdays and 10 p.m. and 10 a.m. on weekends.

7

4.      NYCHA will notify mobility-impaired residents at least 60 days prior to any planned Elevator Outage for modernization that will result in No-service Situations to the building.  During planned Elevator Outages for modernization resulting in No-service Situations to their buildings, NYCHA will provide mobility-impaired tenants temporary or permanent transfers or other accommodations in accordance with NYCHA Standard Procedure 040:00:9 or any successor Procedure.

**H.      Transfer policy**

1.      NYCHA will approve transfers of mobility impaired tenants who are currently housed on or above the third floor of a NYCHA building to first-floor apartments or second-floor apartments in elevator buildings or buildings without elevators regardless of whether the tenant is currently living in an elevator building, consistent with the Tenant Selection and Assignment Plan Transfer Guide, attached hereto as Exhibit 2.  NYCHA will educate its staff as to the requirements of this provision.

2.      NYCHA will regularly publicize to mobility-impaired tenants, via the NYCHA newsletter or other similarly effective means, their right to request a transfer.

3.      Without diminishing the right of the Plaintiff class to seek enforcement of this Stipulation, or the rights of individual class members to pursue other remedies, Plaintiffs' counsel may bring to the attention of NYCHA's counsel the cases of individual class members whose assignment or transfer requests Plaintiffs' counsel believes have not been addressed in a manner consistent with this Stipulation.  NYCHA will promptly investigate such cases, take any appropriate steps required to address them, and report the results of such investigation, including what steps, if any, were or will be taken to resolve the cases within 21 days of receiving Plaintiffs' counsel's notice of the issue.

**I.      Policies and Training**

1.      NYCHA will issue policies or procedures as necessary to implement the requirements of this Stipulation.

2.      NYCHA will train all relevant personnel regarding the obligations contained in this Stipulation, and will continue to train relevant personnel as needed.

**III.    Monitoring**

A.      *Elevator Outages Reports.*  On each Report Date, NYCHA will provide:

1.      Statistical Outage Reports, a sample of which is attached hereto as Exhibit 3 for each month in the Report Period, with data provided by development;

2.      Elevator Outages Hours to Complete, a sample of which is attached hereto as Exhibit 4, for each month in the Report Period;

8

3.      60 Day Rollover Reports, samples of which are attached hereto as Exhibit 5, for each month in the Report Period, with data provided (i) by development; and (ii) by elevator;

4.      Elevator 24 Hour Completions Summaries, a sample of which is attached hereto as Exhibit 6, for each month in the Report Period, with data provided by development;

5.      Elevator 24+ Hour Completions Details, a sample of which is attached hereto as Exhibit 7, for each month in the Report Period;

6.      A file containing raw data including the following information for every Elevator Outage which occurred during the Report Period: (i) elevator identifier, including building address and car-specific identifying information; (ii) date and time at which the problem was reported to NYCHA; (iii) date and time at which the problem was resolved and the elevator restored to normal operation; (iv) whether the Elevator Outage was due to Equipment Failure; and, when available, a report summarizing the start time, end time, and length of each Elevator Outage;

7.      A file containing raw data including the information specified in paragraph 6 above for the subset of Elevator Outages which contributed to a No-service Situation during the Report Period, and, when available, a report summarizing the start time, end time, and length of each No-service Situation; and

8.      To the extent NYCHA has tabulated the data, a report showing, for all of New York City and by borough, for each month in the Report Period: (i) the percentage of No-service Situations resolved in less than 24 hours; (ii) the percentage of Elevator Outages resolved in less than 24 hours; (iii) the percentage of No-service Situations resolved in less than 8 hours; (iv) the percentage of Elevator Outages resolved in less than 8 hours; and (v) the number of Elevator Outages due to Equipment Failure per car.

B.     *Preventive Maintenance Reports.* On each Report Date, NYCHA will provide:

1.      Elevator Preventive Maintenance Annually Scheduled (by elevator), a sample of which is attached hereto as Exhibit 8, covering the Report Period;

2.      Elevator Preventive Maintenance Percentages, samples of which are attached hereto as Exhibit 9, including information (i) by team; (ii) by building; (iii) by borough; and (iv) for all NYCHA buildings in New York City, for the calendar year(s) covering the Report Period;

3.      Data sufficient to identify, for each month in the Report Period, the percentage of preventive maintenance tasks scheduled to be performed by the end of that month, that were performed for each elevator (identified by building and development) and the Three-Month Average of the percentage of scheduled preventive maintenance tasks performed for each elevator (identified by building and development); and

4.      To the extent NYCHA has tabulated the data, a report showing, for all of New York City and by borough, for each month in the Report Period, the average percentage of scheduled preventive maintenance tasks performed.

C.      *Inspections Reports.* On each Report Date, NYCHA will provide:

1.      Elevator Mandated Inspections—Complete, a sample of which is attached hereto as Exhibit 10;

2.      Elevator Inspection Deficiencies Identified, a sample of which is attached hereto as Exhibit 11;

3.      Elevator Mandated Inspections—Satisfactory Rate, a sample of which is attached hereto as Exhibit 12.

D.      *Violations Reports.* On each Report Date, NYCHA will provide:

1.      Elevator Violations Report, a sample of which is attached as Exhibit 13 hereto.

E.      On each Report Date, NYCHA will provide:

1.      All written plans of action developed pursuant to Section II.B.3 above;

2.      Results of the spot checks performed pursuant to Section II.F.3 above;

3.      All written plans of action developed pursuant to Section II.C.3 above;

4.      Elevator 5-Year Plans, and Elevator Capital Plans;

5.      All final Elevator Standard Procedures;

6.      Results of any regular elevator audits, external reviews/assessments, or consultant evaluations conducted;

7.      All reports concerning elevator performance provided to the Mayor's Office;

8.      Descriptions of any enhancements made to MAXIMO pertaining to NYCHA elevators; and

9.      Data showing the number and percentage of mobility-impaired residents in each NYCHA building and development.

F.      NYCHA shall inform Plaintiffs' counsel if an Elevator 24 Hour Completions Summaries Report identifying the number of Elevator Outages restored in less than 8 hours; and greater than 8 hours but less than 24 hours; becomes available and will provide it to Plaintiffs' counsel as part of the monitoring obligation if they so request.

10

G.      NYCHA shall inform Plaintiffs' counsel immediately when a report containing some or all of the information described in Section II.E.1 above regarding No-service Situations becomes available, and will, from that point forward, provide it to Plaintiffs' counsel as part of the monitoring obligation.

H.      NYCHA shall provide the reports specified in Sections III.A-G in Microsoft Excel or a similar format in which the data can be manipulated.

I.      If NYCHA believes that it no longer can produce any report identified in this Section, NYCHA will inform Plaintiffs' counsel and propose an alternative means of providing substantively identical information in comparable form.

J.      Upon review of any of the data contained in the reports required by this Section, Plaintiffs' counsel may request additional information from NYCHA.  The parties will work in good faith to address Plaintiffs' request.

## IV.    Compliance

A.      If Plaintiffs' counsel have evidence that NYCHA is systemically failing to comply with Section II of this Stipulation, with the exception of Section II.B and Section II.C.1, Plaintiffs' counsel may notify NYCHA's counsel in writing of the specific basis and evidence of the claim of systemic non-compliance.  The parties will thereafter attempt in good faith to resolve the claim.  Thirty days after Plaintiffs' counsels' notification of the alleged violation, Plaintiffs' counsel may seek relief from the Court where the alleged violation is systemic.

B.      If Plaintiffs' counsel have evidence that NYCHA is failing to comply with Section II.B or Section II.C.1 of this Stipulation, Plaintiffs' counsel may notify NYCHA's counsel in writing of the specific basis and evidence of the claim of non-compliance.  The parties must thereafter attempt in good faith to resolve the claim.  The parties will re-negotiate Section II.B or Section II.C.1 if appropriate and will retain a third-party mediator upon the request of either party.  If, 60 days after Plaintiffs' counsels' notification of the alleged non-compliance, or at the conclusion of mediation, whichever comes later, the parties have been unable to resolve the claim of violation of Section II.B or Section II.C.1 of this Stipulation, Plaintiffs can seek an enforcement order with the Court.  Plaintiffs' counsel cannot seek to hold NYCHA in contempt of court for at least 60 days after the Court's issuance of an enforcement order.

C.      If Plaintiffs' counsel have evidence that NYCHA is failing to comply with Section III of this Stipulation, Plaintiffs' counsel may notify NYCHA's counsel in writing of the specific basis and evidence of the claim of non-compliance.  The parties will thereafter attempt in good faith to resolve the claim.  Thirty days after Plaintiffs' counsels' notification of the alleged violation, Plaintiffs may seek relief from the Court.  In no case shall Plaintiffs' counsels' first application to the Court seek contempt or sanctions.

D.      Without diminishing the right of the Plaintiff class to seek enforcement of this Stipulation, Plaintiffs' counsel may bring to the attention of NYCHA the performance of individual elevators which are allegedly not meeting the standards set forth in Section II.B or Section II.C.1 of this Stipulation. NYCHA will promptly investigate the elevator and take any appropriate steps required to resolve the issue(s) leading to such performance.  NYCHA will

11

report the results of such investigation, including what steps, if any, were taken to resolve the issue(s), in writing to Plaintiffs' counsel within 30 days of receiving Plaintiffs' counsel's report of the  sub-standard performance.  Plaintiffs will only seek relief from the Court, pursuant to Section IV.A, where NYCHA's alleged non-compliance is systemic.

**V.      Notices to counsel**

Any notice, report, or communication required by or made pursuant to the terms of this Stipulation, other than notices sent to individual class members, shall be sent by first class mail, postage prepaid, and by electronic mail, to all of the people below:

      To Plaintiffs' Counsel:

      Jane Greengold Stevens
      New York Legal Assistance Group
      7 Hanover Square, 18th Floor
      New York, NY 10004
      email:  jstevens@nylag.org

      Andrew J. Ehrlich
      Paul, Weiss, Rifkind, Wharton & Garrison LLP
      1285 Avenue of the Americas
      New York, NY 10019
      email:  aehrlich@paulweiss.com

      To NYCHA:

      Steven J. Rappaport
      New York City Housing Authority
      250 Broadway, 9th Floor
      New York, N.Y. 10007
      email: steven.rappaport@nycha.nyc.gov

**VI.      Jurisdiction Period**

      A.      Any and all rights, duties, and obligations created by this Stipulation will expire three years after the Effective Date.

      B.      Any party to this Stipulation may move this Court for an order extending the duration of the Stipulation and the jurisdiction of the Court over this Stipulation, and shall make any such motion on or before the scheduled termination of this Court's jurisdiction, unless on the consent of all parties, another date is agreed to in writing.  In no event shall the Stipulation Period be extended beyond 4.5 years after the Effective Date.

      C.      If, two years after the Effective Date, NYCHA has met the standards in Section II.B and II.C.1 for the prior 6 consecutive months, and NYCHA has complied with all other terms of this Stipulation, all rights, duties, and obligations created by this Stipulation shall be

terminated.   If the parties are in agreement that the effect of this Stipulation should be terminated because of NYCHA's compliance, they shall promptly make a joint application to the Court for termination of the Stipulation.  If Plaintiffs' counsel and NYCHA are unable to agree whether the Stipulation should be terminated, NYCHA may make a contested application, on notice to Plaintiffs' counsel, to terminate the Stipulation.   No such application shall be made, either jointly or on a contested basis, until at least 60 days after Plaintiffs have received NYCHA's monitoring reports as set forth in Section III for the Report Date occurring two years after the Effective Date.

D.      After the expiration of the Stipulation, the Court's jurisdiction shall conclude and all rights and claims arising under the provisions of this Stipulation shall terminate and all claims under this Complaint that have not previously been dismissed shall be dismissed with prejudice.

E.      During the Stipulation Period, NYCHA will give Plaintiffs' counsel prior notice of any proposed substantive change in policies and procedures set forth  in this Stipulation, including, but not limited, to any change due to substantial reductions in NYCHA's budget.  If Plaintiffs' counsel do not object to the proposed change as contrary to this Stipulation within fourteen days of the notice, NYCHA may immediately implement the change.  If Plaintiffs' counsel object to the proposed change as contrary to this Stipulation within fourteen days of the notice, the parties will meet and confer to resolve the issue.  After meeting and conferring, if Plaintiffs' counsel still objects to the proposed change as contrary to this Stipulation, NYCHA may apply to the Court for approval for the proposed change, and may implement the change only upon Court approval.

F.      This action is discontinued with prejudice except the Court retains jurisdiction to enforce this Stipulation.

## VII.    Attorneys' fees

NYCHA will pay to counsel for Plaintiffs three-hundred forty thousand dollars ($340,000) in attorneys' fees, and twenty-five thousand dollars ($25,000) in costs and disbursements, in full settlement of Plaintiffs' claims for attorneys' fees, costs, and disbursements against NYCHA, in, arising from, or in connection with this Action through the date that this Stipulation is so ordered by the Court.  NYCHA shall pay by checks made payable to the New York Legal Assistance Group in the amount of $340,000 and to Paul, Weiss, Rifkind, Wharton & Garrison LLP in the amount of $25,000.  NYCHA shall issue payment in full within ninety (90) days after this Stipulation is so ordered by the Court.

Dated:  June 8, 2012
New York, New York

KELLY D. MACNEAL
ACTING GENERAL COUNSEL
NEW YORK CITY HOUSING AUTHORITY

13

*Attorney for Defendant NYCHA*
New York City Housing Authority
250 Broadway, 9th Floor
New York, N.Y. 10007

By: _____
STEVEN J. RAPPAPORT
(212) 776-5152
steven.rappaport@nycha.nyc.gov

YISROEL SCHULMAN
NEW YORK LEGAL ASSISTANCE GROUP
*Attorney for Plaintiffs*
Jane Greengold Stevens
Jennifer Magida
Julia Russell
Danielle Tarantolo
7 Hanover Sq., 18th Floor
New York, NY 10004

By: _____
JANE GREENGOLD STEVENS
(212) 613-5031
jstevens@nylag.org

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*Attorney for Plaintiffs*
Andrew J. Ehrlich
Sam A. Yospe
1285 Avenue of the Americas
New York, NY 10019

By: _____
ANDREW J. EHRLICH
(212) 373-3000
aehrlich@paulweiss.com


SO ORDERED THIS___DAY OF ___, 2012:


_____
HON. ROBERT LEVY
MAGISTRATE JUDGE


14

*Attorney for Defendant NYCHA*
New York City Housing Authority
250 Broadway, 9th Floor
New York, N.Y. 10007

By:_____
STEVEN J. RAPPAPORT
 (212) 776-5152
steven.rappaport@nycha.nyc.gov

YISROEL SCHULMAN
NEW YORK LEGAL ASSISTANCE GROUP
*Attorney for Plaintiffs*
Jane Greengold Stevens
Jennifer Magida
Julia Russell
Danielle Tarantolo
7 Hanover Sq., 18th Floor
New York, NY 10004

By: _____
JANE GREENGOLD STEVENS
(212) 613-5031
jstevens@nylag.org

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*Attorney for Plaintiffs*
Andrew J. Ehrlich
Sam A. Yospe
1285 Avenue of the Americas
New York, NY 10019

By: _____
ANDREW J. EHRLICH
(212) 373-3000
aehrlich@paulweiss.com


SO ORDERED THIS___DAY OF ___, 2012:


                                    _____
                                    HON. ROBERT LEVY
                                    MAGISTRATE JUDGE


14